UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

FERNCLIFF CEMETERY ASSOCIATION,

                                    Plaintiff,

            - against -

TOWN OF GREENBURGH, NEW YORK,

                                    Defendant.

-------------------------------------------------------------x

**OPINION & ORDER**

No. 18-CV-6411 (CS)

<u>Appearances</u>:

Frederick W. Turner
Turner & Turner
White Plains, New York

William Hughes Mulligan, Jr.
Bleakley Platt & Schmidt, LLP
White Plains, New York
*Counsel for Plaintiff*

Richard L. Marasse
Timothy W. Lewis
Town of Greenburgh Town Attorney's Office
Greenburgh, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court are Defendant Town of Greenburgh's motions to disqualify Plaintiff's

counsel Frederick W. Turner, (Doc. 30), and dismiss the Amended Complaint, (Doc. 31).  For

the following reasons, Defendant's motion to disqualify is DENIED, and Defendant's motion to

dismiss is GRANTED.

## I.      **BACKGROUND**

        The Court accepts as true the facts, but not the conclusions, set forth in Plaintiff's First

Amended Complaint.  (Doc. 28 ("FAC").)

A.    **Facts**

Plaintiff Ferncliff Cemetery Association ("Ferncliff") operates a cemetery located in Hartsdale, Town of Greenburgh, New York.  (*Id.* ¶ 10.)  Plaintiff's property consists of 63.5 acres on the north side of Secor Road (the "North Parcel") and approximately 12.5 acres on the south side of Secor Road (the "South Parcel").  (*Id.* ¶ 19.)  Defendant Town of Greenburgh (the "Town") has vested its legislative power in the Town Board, comprising four elected Town Council members and the Town Supervisor.  (*Id.* ¶ 11.)  The Town's Planning Board, appointed by the Town Board, reviews development plans for the Town.  (*Id.* ¶ 17.)  The Town's Zoning Board of Appeals ("ZBA") is authorized to apply the Town's zoning ordinances and hear appeals from decisions rendered by the Town's Building Inspector.  (*Id.* ¶ 12.)  The Town's Land Use Committee advises the Town's Boards on zoning and land-use applications.  (*See id.* ¶ 14.)  Its members include the Building Inspector and the Town Attorney.  (*Id.*)  From 1992 to 2000, Mr. Turner – who now represents Plaintiff – was the Town Attorney.  (Doc. 30-1 ¶ 5.)

In 1902, the Westchester County Board of Supervisors granted Plaintiff the authority to use certain land "for cemetery purposes" and the cemetery began operating a year later.  (*Id.* ¶¶ 18-20.)  The Parcels changed hands several times, and in 1950, Grove Hill Realty Company acquired title to the South Parcel.  (*Id.* ¶¶ 18-26.)  In 1963, the Town amended its Zoning Ordinance to prohibit the expansion of cemeteries in the Town.[1]  (*See* Doc. 31 Ex. A ("ZBA Decision") at 2.)[2]  In 1971, Grove Hill conveyed the South Parcel to Ferncliff.  (FAC ¶ 27.)

---

[1] The ordinance provides:  "Cemeteries and crematories in existence on January 1, 1963 are permitted, provided that the land area of the cemetery shall not be increased."  Town of Greenburgh Code § 285-36B.

[2] "The district court can refer to evidence outside the pleadings when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *Broidy Capital Mgmt. LLC v. Benomar*, No. 19-236, 2019 WL 6646623, at *2 (2d Cir. Dec. 6, 2019) (alteration and internal

In 1990, Plaintiff filed an application for site plan approval to build a mausoleum on the

North Parcel (the "Rosewood Mausoleum"). (*Id.* ¶¶ 28, 31.) The Town Board denied Plaintiff's

application and Plaintiff commenced an Article 78 proceeding. (*Id.* ¶¶ 34-37.) After the court

vacated the Town Board's decision, Defendant issued ordinances that restricted construction of

new cemetery buildings. (*See, e.g.*, *id.* ¶¶ 49-50.) Following two additional lawsuits, the parties

settled the matter in 1995 and Plaintiff constructed the Rosewood Mausoleum in 1999, (together,

the "Rosewood matter"). (*See id.* ¶¶ 38-61.)

### 1.    ZBA Decision

In 2001, Plaintiff applied for a building permit for a caretaker cottage on the South

Parcel. (*Id.* ¶¶ 139, 142.) The Town Building Inspector approved the application. (*Id.* ¶ 142.)

In 2013, Plaintiff submitted another building permit application to replace the existing

caretaker's cottage with a new cottage that would include a garage for vehicles, equipment,

materials, and supplies. (*Id.* ¶¶ 140-141.) The Town Building Inspector denied the application

but suggested that Plaintiff apply for a variance. (*Id.* ¶ 146; *see* Doc. 31 Ex. A at 2, 8.) Plaintiff

appealed the decision to the ZBA. (FAC ¶ 148.) In 2015, the ZBA found that Plaintiff was

entitled to a building permit to the extent that the proposed building contained a residence, but

affirmed the Building Inspector's decision regarding the garage because it was "much larger"

than a residential accessory garage and more appropriately described as "a maintenance facility,

storage facility or commercial garage," none of which were permitted under the Zoning

---

quotation marks omitted); *Liberty Cable Co. v. City of N.Y.*, 893 F. Supp. 191, 199 n.11
(S.D.N.Y.) (collecting cases), *aff'd*, 60 F.3d 961 (2d Cir. 1995). Both parties have submitted
sworn declarations and affidavits, attaching several documents thereto, and neither party
disputed the authenticity of any of these attachments nor asserted that there were any that the
Court should not consider. I accordingly consider these documents in my analysis.

Ordinance.  (*Id.* ¶ 168; *see* ZBA Decision at 8.)  The ZBA Decision provided that Plaintiff would require a use variance for such a facility.  (FAC ¶ 168.)

Plaintiff did not pursue a variance and instead filed an Article 78 petition in state court.  (*Id.* ¶ 169; *see* Doc. 31 Ex. B.)  The Supreme Court, Westchester County, held that the ZBA had properly considered the matter and denied Ferncliff's petition.  (FAC ¶ 169; *see* Doc. 31 Ex. B at 4-5.)[3]  Plaintiff's appeal of that decision is currently pending in New York state court.  (FAC ¶ 170).

## 2. The Town's Comprehensive Plan

In 2007, the Town formed a Comprehensive Plan Steering Committee ("CPSC") to develop a new Comprehensive Plan for the unincorporated area of the Town.  (*Id.* ¶ 77.)  Two prior Comprehensive plans from 1970 and 2000 identified Plaintiff's approximately 76 acres of property as cemetery property.  (*Id.* ¶ 78.)  In July 2012, the Town's Deputy Commissioner of Community Development and Conservation prepared a map entitled "Future Land Use" that showed Ferncliff's South Parcel classified as "cemetery" land, and emailed it to the Planning Department to include in the draft Comprehensive Plan.  (*Id.* ¶ 81.)  In March 2014, the Town released the first draft of the Comprehensive Plan, which showed the South Parcel as cemetery land on an "Existing Land Use Map" but as residential land on a "Future Land Use Map."  (*Id.* ¶ 84.)  According to the draft, the property class code was derived "from historic data and ongoing monitoring that reflect[ed] the existing use of each lot."  (*Id.*)  A second draft of the Comprehensive Plan released on March 27, 2015, showed the same designations.  (*Id.* ¶ 95.)  In August 2015, the third draft of the Comprehensive Plan showed the current and future use of the South Parcel as residential.  (*Id.* ¶ 108.)  The fourth and final draft, released December 4, 2015,

_____

[3] Citations to Doc. 31 Ex. B use the page numbers generated by the Court's ECF system.

and adopted by the Town Board on September 28, 2016, also showed the current and future use of the South Parcel as residential. (*Id.* ¶¶ 111, 121.) In October 2016, Plaintiff filed an Article 78 petition in state court seeking, among other things, to annul, void, and vacate the Town's resolution adopting the 2016 Comprehensive Plan. (*Id.* ¶ 123; *see* Doc. 31 Ex. C at 1.) Plaintiff also sought an order directing that all land-use maps show all of its 76 acres as cemetery property. (Doc. 31 Ex. C at 1.) The Town filed a motion to dismiss, which the court denied, Plaintiff filed an order to show cause related to a discovery dispute, and the Town filed a motion to stay the proceeding pending resolution of the ZBA Decision appeal, which the court granted. (FAC ¶¶ 123-126.)

### 3. Tax Assessment Rolls

In 2003, Plaintiff applied for an exemption from real property taxes pertaining to the South Parcel on the ground that it is cemetery property. (*Id.* ¶¶ 63-65.) After the Town Assessor denied the application, Plaintiff appealed to the Town's Board of Assessment Review ("BAR"). (*Id.* ¶ 66.) The BAR denied the appeal and Plaintiff commenced another Article 78 proceeding. (*Id.* ¶¶ 66, 68.) The parties settled the matter in 2005, agreeing that the South Parcel would be "classified as cemetery property exempt from taxation . . . on the 2004 assessment roll." (*Id.* ¶¶ 69-70.) The Town thereafter treated the South Parcel as tax-exempt, but did not change its classification until September 15, 2016, when the Town's Final Assessment Roll classified it as cemetery property. (*Id.* ¶¶ 118, 132.) According to Plaintiff, the Town's failure to change the classification supported (1) opposition to Plaintiff's caretaker cottage application and (2) the CPSC's designation of the South Parcel as residential property on the Current and Future Land Use Maps in the Comprehensive Plan. (*Id.* ¶ 132.)

On June 1, 2017, the Town Assessor changed the South Parcel's classification on the 2017 Tentative Assessment Roll from cemetery to residential. (*Id.* ¶ 134.) Plaintiff thereafter appealed to the BAR to restore the cemetery designation, and the BAR denied that appeal on September 15, 2017. (*Id.* ¶¶ 135-136.) Plaintiff then filed an Article 78 petition in state court seeking to annul, void, and vacate the BAR decision. (*Id.* ¶ 137.) The court stayed the matter pending resolution of the ZBA Decision appeal. (*Id.*) Plaintiff moved to vacate the stay, and the court denied that motion on October 30, 2018. (*Id.*) On September 17, 2018, the BAR denied Plaintiff's appeal challenging the classification of the South Parcel as residential on the 2018 Final Assessment Roll, and a subsequent proceeding has also been stayed. (*Id.* ¶ 138.)

### B.   Procedural History

Plaintiff commenced this action on July 16, 2018. (Doc. 1.) On January 2, 2019, Defendant filed a pre-motion letter in anticipation of its motion to dismiss, (Doc. 12), and the Court scheduled a pre-motion conference for January 25, 2019, (Doc. 13). At the conference, at which Defendant indicated it also intended to move to disqualify Mr. Turner, the Court granted Plaintiff leave to amend its complaint, (Minute Entry dated Jan. 25, 2019), which it did on May 30, 2019, (AC). On June 25, 2019, Defendant filed a motion to disqualify, (Doc. 30), along with its memorandum of law, (Doc. 30-2 ("D's Mem.")), and its affirmation of counsel, (Doc. 30-1). Plaintiff filed an opposition memorandum, (Doc. 35 ("P's Opp.")), and affirmation of counsel, (Doc. 34 ("Turner Affirm")). Defendant filed a reply affirmation. (Doc. 38.)

On June 25, Defendant also filed its motion to dismiss, (Doc. 31), along with its memorandum of law, (Doc. 31-7 ("Ds' MTD Mem.")), an affirmation of counsel, (Doc. 31-1), and various exhibits, (Doc. 31 Exs. A-E). Plaintiff filed an opposition memorandum, (Doc. 37 ("P's MTD Opp.")), an affirmation of counsel, (Doc. 36), and accompanying exhibits, (*id.* Exs.

1-6). Defendant filed a reply memorandum, (Doc. 39), and affirmation of counsel, (Doc. 40), with exhibits, (*id.* Exs. F-H).

Plaintiff's FAC raises the following claims against the Town under 42 U.S.C. § 1983: (1) the Town's reclassification of the South Parcel from cemetery to residential in the 2016 Comprehensive Plan and the 2017 assessment roll violated Plaintiff's right to substantive due process under the Fifth Amendment, (FAC ¶¶ 174-189); (2) the ZBA Decision effected a regulatory taking without just compensation in violation of the Fifth Amendment, (*id.* ¶¶ 190-198); (3) § 285-36B of the Town Code, which precludes increase in the land area of cemeteries, constitutes a taking under the Fifth Amendment and the New York State Constitution both facially and as applied to Plaintiff's caretaker's cottage application, (*id.* ¶¶ 199-211); and (4) the South Parcel's designation as residential property in the Comprehensive Plan violates the Fourteenth Amendment Equal Protection Clause, (*id.* ¶¶ 212-218).[4]

## II.    DISCUSSION

### A.    Motion to Disqualify

Plaintiff's counsel Frederick W. Turner served as the Greenburgh Town Attorney between 1992 and 2000, during which time the parties were engaged in litigation. (Turner Affirm ¶¶ 4-5.) Defendant moves to disqualify Mr. Turner on the ground that, during his tenure, he "was privy to confidential information and discussions related to the events mentioned in Plaintiff's Amended Complaint" – specifically, the Rosewood matter. (D's Mem. at 3.)

---

[4] The FAC contains numbering errors. The paragraphs are numbered 1 through 223, (*see* FAC at 1-55), followed by paragraphs 214 through 218 instead of 224 through 228, (*see id.* at 55-56.) I refer to paragraphs 214 through 218 on pages 55 and 56 as paragraphs 224 through 228, as though they were consecutively numbered.

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process," *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (internal quotation marks omitted), and the decision to disqualify is "a matter committed to the sound discretion of the district court," *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994). "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny . . . ." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (internal quotation marks omitted). "Accordingly, such motions are viewed with disfavor and, while any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Goodwine v. City of N.Y.*, No. 15-CV-2868, 2016 WL 379761, at *2 (S.D.N.Y. Jan. 29, 2016) (internal quotation marks omitted).

Rule 1.11 of the New York Rules of Professional Conduct provides in relevant part that "a lawyer who has formerly served as a public officer or employee of the government . . . shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee." N.Y.R. Prof'l Conduct 1.11(a)(2). "[T]he 'matter' must have been the same matter," and assessing the scope of a matter "is an intensely fact-specific inquiry." *Green v. City of N.Y.*, No. 10-CV-8214, 2011 WL 2419864, at *2 (S.D.N.Y. June 7, 2011). Under New York Code of Professional Responsibility Disciplinary Rule 9-101(B), a predecessor to Rule 1.11,[5] a "matter" was defined as "a discrete and isolatable transaction or set of transactions between identifiable parties." *McBean v. City of N.Y.*, No. 02-

---

[5] Rule 1.11 the New York Rules of Professional Conduct is "similar in substance to its predecessor, Disciplinary Rule 9-101(B), which prohibited a lawyer from 'accept[ing] employment in a matter in which he had substantial responsibility while he was a public employee.'" *Goodwine*, 2016 WL 379761, at *2 n.2 (quoting N.Y.R. Prof'l Resp. DR 9-101(B)) (alteration in original).

CV-5426, 2003 WL 21277115, at *2 (S.D.N.Y. June 3, 2003) (internal quotation marks omitted); *see Goodwine*, 2016 WL 379761, at *2-3 (adopting *McBean*'s definition in Rule 1.11(a) analysis). "For purposes of Rule 1.11(a)(2), substantial participation is substantive in nature and directly affects the merits of the prior case." *Arroyo v. City of Buffalo*, 15-CV-753, 2017 WL 3085835, at *12 (W.D.N.Y. July 20, 2017) (internal quotation marks and alterations omitted), *report & recommendation adopted*, 2018 WL 488943 (W.D.N.Y. Jan. 20, 2018).

According to Defendant, when Mr. Turner served as Town Attorney he served as counsel to the Town Board and attended "most, if not all" Board meetings, including executive sessions and work sessions, from 1992 through January 2000. (Doc. 30-1 ¶ 5.) Defendant argues that Mr. Turner should be disqualified because his position made him "privy to confidential information and discussions related to the events mentioned in Plaintiff's Amended Complaint." (D's Mem. at 3.) Plaintiff contends that "Defendant has totally failed to carry its burden of (i) establishing any substantive connection between this matter and the Rosewood matter, or (ii) mak[ing] any showing that Turner participated in the Rosewood matter personally and substantially." (P's Opp. at 6-7 (internal quotation marks omitted).)[6]

On the first point, I agree. Defendant's conclusory memorandum of law in support of its motion contains, at most, two sentences of argument, and they do not suffice to meet the "heavy

---

[6] Plaintiff argues that American Bar Association Model Rule of Professional Conduct 1.11, not New York Rule of Professional Conduct 1.11, should govern. (P's Opp. at 6.) In this Circuit, "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules." *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). Reliance on the New York Rules and on the ABA Model Rules, on which the New York Rules were modeled, is proper. *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188, 2019 WL 3034866, at *5 n.4 (S.D.N.Y. July 11, 2019). I analyze Plaintiff's obligation under the New York rule, but the outcome is the same under either rule.

burden of demonstrating that disqualification is necessary." *Goodwine*, 2016 WL 379761, at *2

(internal quotation marks omitted). Assuming for the sake of argument that Defendant has

shown that Mr. Turner participated "personally and substantially" in the Rosewood matter,[7]

Defendant has not shown that the Rosewood litigation is the same "matter" as the instant case.

The Rosewood litigation involved development of the North Parcel (specifically, the height of a

proposed mausoleum), while the FAC challenges Defendant's development of the South Parcel

(specifically, a caretaker's cottage and garage), as well as the 2016 adoption of the

Comprehensive Plan and the tax authority's 2017 and 2018 determinations as they relate to the

South Parcel. (*See* FAC ¶¶ 180-228.) Plaintiff has also explicitly stated that facts regarding

Rosewood litigation "are provided for historical perspective and informational purposes only"

and that it is not seeking any relief related thereto. (*Id.* ¶ 28). Although the Rosewood litigation

and the instant dispute involve the same parties, the legal theories and facts are not the same.

*Compare Goodwine*, 2016 WL 379761, at *3 (finding matters are the same where plaintiff,

defendant, and legal theory are the same), *with McBean*, 2003 WL 21277115, at *3 (finding

matters distinct where they have different parties, facts, and legal issues). In sum, Defendant has

---

[7] In support of its position that Mr. Turner participated "personally and substantially" in the previous matter, Defendant on reply offers four documents: (1) a sur-reply affirmation from 1994 in the Rosewood litigation authored by a Deputy Town Attorney who worked for Mr. Turner, (Doc. 38-2 at 1-4); (2) a draft memorandum of law in the Rosewood litigation written by the Deputy Town Attorney purportedly showing edits by Mr. Turner relating to the structure of the argument, (*id.* at 5-6; *see* Doc. 38 ¶ 13); (3) a January 12, 1995 memorandum from Mr. Turner as Town Attorney to Mr. Lieberman as Deputy Town Attorney including instructions to keep him apprised, provide draft pleadings for his review, and work with the insurance company to see if it would defend the Ferncliff cases, (Doc. 38-3 at 1); and (4) a 1995 letter to Mr. Turner as Town Attorney inquiring about public statements he made about the mausoleum-height zoning change, (Doc. 38-4). According to Defendant, these documents belie the representation Mr. Turner made at the conference held on January 25, 2019, that outside counsel handled the Rosewood matter. These documents do not show whether outside counsel took over the litigation or not, but they show some involvement by Mr. Tucker. I need not decide whether that involvement was substantial.

not shown that the Rosewood litigation and this case constitute the same "discrete and isolatable . . . set of transactions," *McBean*, 2003 WL 21277115, at *2, and therefore they are not the same matter.  Thus, Mr. Turner's participation in the Rosewood matter would not, absent unusual circumstances, require his disqualification in the instant case.

Defendant points out, however, that because the FAC includes a lengthy description of the litigation over the Rosewood Mausoleum, (FAC ¶¶ 28-62), and because Plaintiff argues – in connection with its argument that seeking a variance for the cottage/garage building would be futile – that "[r]eference must be made to Ferncliff's attempts to construct the Rosewood Mausoleum from 1989-1996," (P's MTD Opp. at 10), Plaintiff has made this litigation and the Rosewood litigation into the same matter, (Doc. 38 ¶¶ 11-12).  It does indeed appear that Plaintiff is trying to eat its cake and have it too, by arguing that the two matters are distinct, in order to keep Mr. Turner as its counsel, and that they are interrelated, in order to bolster its argument on futility.  Were the latter a persuasive argument, I would reach the issue of substantial participation and perhaps disqualify Mr. Turner, because the matters would be interrelated (or perhaps I would give Plaintiff the option of dropping the Rosewood allegations from its case).  But as discussed below, I do not find the historical reference to the Rosewood matter to be sufficient to plausibly show futility.

Accordingly, Defendant's motion to disqualify Mr. Tucker is denied.

### B.  Motion to Dismiss

#### 1.  Legal Standard

"Subject matter jurisdiction is a threshold issue."  *Corsello v. Verizon N.Y., Inc.*, 976 F. Supp. 2d 354, 358 (E.D.N.Y. 2013), *aff'd sub nom. Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506 (2d Cir. 2014).  "If the case is not ripe for review, subject matter jurisdiction does not exist and the

case must be dismissed." *BT Holdings, LLC v. Village. of Chester*, No. 15-CV-1986, 2016 WL 796866, at *3 (S.D.N.Y. Feb. 23, 2016), *aff'd*, 670 F. App'x 17 (2d Cir. 2016) (summary order). "Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alteration in original) (citations and internal quotation marks omitted), *aff'd on other grounds*, 561 U.S. 247 (2010).

## 2. Ripeness

The ripeness doctrine "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not actual or imminent, but instead conjectural or hypothetical." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (internal quotation marks omitted). "Standing and ripeness are closely related doctrines." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) (internal quotation marks and alteration omitted); *see In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 109-10 (2d Cir. 2013).

Before any land-use dispute – whether brought as a takings, due process, or equal protection claim – is ripe for review, plaintiffs must satisfy a finality requirement. *Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005). The finality requirement demands

that the "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019).[8] Plaintiff must satisfy a "high burden" of proving that the court can look to a "final, definitive position from a local authority to assess precisely how they can use their property." *Murphy*, 402 F.3d at 347. "'[F]ederal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 599 (S.D.N.Y. 2013) (quoting *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

In land-use claims, the finality requirement is generally only satisfied once a property owner has submitted "at least one meaningful application for a variance." *Murphy*, 402 F.3d at 348; *see Rivendell Winery, LLC v. Town of New Paltz*, 725 F. Supp. 2d 311, 318 (N.D.N.Y. 2010). For example, in *MacDonald, Sommer & Frates v. Yolo County*, Plaintiff's takings claim was not ripe for review because the plaintiff-developer failed to apply for variances, leaving open the "possibility that some development" might be permitted. 477 U.S. 340, 351-352 (1986); *see Hennelly v. Town of Middletown*, No. 10-CV-966, 2010 WL 4366917, at *3 (N.D.N.Y. Oct. 28, 2010) (dismissing Plaintiff's due process land-use challenge where he failed to apply for variances which could have allowed him to build on property).

---

[8] In *Knick*, the Supreme Court overruled the second prong of *Williamson County* (which required that a land-use plaintiff first seek compensation from the defendant) but left the finality requirement for ripeness undisturbed: "Knick does not question the validity of [*Williamson*'s] finality requirement, which is not at issue here. *Knick*, 139 S. Ct. at 2169. Plaintiff's repeated assertions that *Knick* somehow diminishes the finality requirement are therefore misplaced.

A plaintiff need not, however, apply for a variance from the zoning laws if such action would be futile. *See Murphy*, 402 F.3d at 349. "To demonstrate futility, Plaintiffs must [show] that Defendants have dug in their heels and made clear that all applications will be denied." *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *6 (S.D.N.Y. Mar. 31, 2009) (internal quotation marks and alterations omitted), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) (summary order). "[M]ere doubt" that variance applications will be denied, however, is insufficient to invoke the futility exception. *Rivendell Winery*, 725 F. Supp. 2d at 319. Futility is "quite narrowly" construed, *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998), and "does not exist merely because of hostility to the developer's plans," *S&R Dev. Estates, LLC*, 588 F. Supp. 2d at 463.

a.     ZBA Decision

Defendant argues that Plaintiff's claims are not ripe because Plaintiff never sought a variance after the ZBA Decision, and without a decision on a variance, this Court cannot determine how the South Parcel can be used or how zoning requirements would be applied to the parcel. (D's MTD Mem. at 5-8.) I agree. In its 2015 decision, the ZBA found that the proposed use of the South Parcel "for cemetery purposes . . . would constitute a prohibited expansion of the cemetery under Section 285-36B of the Zoning Ordinance" because the South Parcel was not cemetery property on January 1, 1963, the effective date of that Ordinance. (ZBA Decision at 8; *see id.* at 2.) While the ZBA permitted construction of a residence, it noted that the "garage/maintenance/storage portion of the proposed structure" would require a use variance. (*Id.* at 8.) The ZBA clearly left open the possibility that, if granted a variance, Plaintiff could use the property according to its wishes. Plaintiff does not allege that it applied for a variance after the ZBA decision. Nor in opposition to Defendant's motion to dismiss does it dispute its failure

to so apply.  I therefore cannot say that Plaintiff had obtained a definitive answer as to how the South Parcel can be used.

Defendant suggests that *Parkview Associates v. City of New York*, 71 N.Y.2d 274 (1988), is instructive.  (D's MTD Mem. at 7-8.)  In that case, the City partially revoked a building permit that was erroneously issued and required a developer to remove several floors that had already been constructed.  *Parkview Assocs.*, 71 N.Y.2d at 281-82.  The Court of Appeals affirmed the City's right to revoke the permit, *id.* at 282, and held that the plaintiff's taking claim was premature "because Parkview had failed to apply for a variance," *id.* at 283.  The parties dispute whether the developer was ultimately permitted to keep the floors it had already built, but in any event, *Parkview Associates* supports the well-settled notion that aggrieved parties must apply for a variance before obtaining relief in the courts.  Here, the ZBA Decision leaves open the "possibility that some development" might be permitted, *see MacDonald*, 477 U.S. at 352, and "[t]he potential for . . . administrative solutions confirms the conclusion that the issues are not yet ripe" and plaintiff's injuries are "speculative," *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349 (S.D.N.Y. 2000) (internal quotation marks omitted), *aff'd*, 252 F.3d 645 (2d Cir. 2001).  "By forgoing the avenue[] for relief outlined in the [ZBA's] determination, [Plaintiff] deprived the [Town] of the opportunity to issue a final decision."  *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014).

Plaintiff argues that any application for a use variance would have been futile.  (P's MTD Opp. at 9-12.)  But Plaintiff has failed to plausibly allege Defendant has "dug in [its] heels and made clear that all applications will be denied."  *Osborne*, 2009 WL 884697, at *6.  There is no

history of the Town rejecting variance applications relating to the South Parcel.[9]  And both the

Building Inspector and the ZBA told Plaintiff it could apply for a variance, but it chose not to do

so.  *See Dreher v. Doherty*, 531 F. App'x 82, 83 (2d Cir. 2013) (summary order) ("The record

also belies any assertion that the futility exception to ripeness should apply here because the

[plaintiffs] were informed by the [defendant Town] that they could apply for a variance – an

invitation they ultimately declined.").[10]  There is simply no basis on which to conclude that a

variance will necessarily be denied.[11]

 Accordingly, Plaintiff's claim is not ripe for review by this Court.

   b. Comprehensive Plan and Tax Rolls

 Plaintiff contends that it has suffered two adverse actions other than the ZBA decision:

(1) the imposition of the 2016 Comprehensive Plan, which designated the South Parcel as

residential rather than cemetery property, and (2) the inclusion of that Parcel on the 2017 and

2018 tax rolls as taxable residential property rather than exempt cemetery property.  (P's MTD

Opp. at 5-6.)  As to the first action, I will assume that the Town's adoption of the Comprehensive

---

[9] Plaintiff's predecessor applied for a variance in 1970, and Plaintiff did so again in 1993, but both applications were withdrawn before the ZBA could render a decision.  (Doc. 40 ¶ 21; ZBA Decision at 4.)

[10] Plaintiff's reliance on *Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Township*, 996 F. Supp. 409 (D.N.J. 1998), is misplaced.  (*See* P's MTD Opp. at 10.)  In that case, the court credited a zoning official's testimony that it was "extremely unlikely" that a variance would have been granted, and held that "there [was] no question about how the regulations at issue would apply to the particular land in question."  *Assisted Living Assocs.*, 996 F. Supp. at 426 (internal quotation marks and alteration omitted).  Plaintiff here offers no such support for its position.

[11] Plaintiff argues that the Rosewood matter contributes to the conclusion that seeking a variance would be futile, (P's MTD Opp. at 10), but that the Town apparently dug in its heels twenty-five years ago over the height of a mausoleum on the North Parcel reveals nothing about what it might decide now about a maintenance garage on the South Parcel.  There is no suggestion that the relevant policies and personnel from the 1990s are still in place, or that the extent of or reasons for community opposition are comparable.

Plan may be final in that it could constitute a "definitive position" on the classification of Plaintiff's property as residential rather than cemetery property, *see Murphy*, 402 F.3d at 347, and there is no indication that Plaintiff could have applied for a variance from the imposition of the Comprehensive Plan (even though Plaintiff could seek a variance from any particular land-use decision). But even if the Comprehensive Plan is final, Plaintiff does not allege that it has tried to use the South Parcel for cemetery purposes except insofar as it sought to build the cottage/garage – a decision which, as noted above, is not ripe for review – so any other injury arising out of the Comprehensive Plan is "conjectural or hypothetical." *See Walsh*, 714 F.3d at 688. Accordingly, Plaintiff has not plausibly alleged that it has been injured, and its claims arising out of this action are unripe. As to the second action – and again assuming it to be final – the Town has continued to treat the South Parcel as tax exempt, notwithstanding its classification on the assessment rolls. (FAC ¶ 132.) Plaintiff therefore cannot plausibly allege that it has been injured by the Parcel's inclusion as residential property on the 2017 and 2018 tax rolls, and any challenge to hypothetical future taxation here is too speculative to be ripe for adjudication. *See Nenninger v. Village of Port Jefferson*, 509 F. App'x 36, 39 (2d Cir. 2013) (summary order) (injury "too speculative" where town threatened to place tax liens on property but did not do so).[12]

In sum, taking all of the allegations in the FAC as to the cottage/garage as true, Plaintiff has not shown that it received a "final decision" within the meaning of *Williamson*, 473 U.S. at

---

[12] Whether Plaintiff's claims arising out of these two alleged actions are analyzed under ripeness or standing, the outcome is the same. *See SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 526 (E.D.N.Y. 2013) ("Although the plaintiff must independently establish that it has standing to bring this action, and that its claim is ripe, the Court [may] analyze these inquires together because this case concerns whether plaintiff's injury is currently concrete, and not hypothetical, which implicates both standing and ripeness."), *aff'd*, 548 F. App'x 741 (2d Cir. 2014) (summary order).

193 ("[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."), because it has not demonstrated that the Town would have necessarily denied Plaintiff's application for a variance such that filing an application would have been futile, *Rivendell*, 725 F. Supp. 2d at 319 ("[T]he allegations in the complaint are far from sufficient to establish that the Zoning Board has dug in its heels and made clear that an application for a variance will be denied.").[13]

And as to the Comprehensive Plan and Plaintiff's classification on the 2017 and 2018 tax rolls, Plaintiff has not plausibly alleged that either has caused it to suffer any injury that is not "conjectural or hypothetical." *See Walsh*, 714 F.3d at 688.

This analysis applies to all of Plaintiff's federal land-use claims – takings, due process, and equal protection. *Lost Trail*, 289 F. App'x at 444; *see Grossi v. City of N.Y.*, No. 08-CV-1083, 2009 WL 4456307, at *5 (E.D.N.Y. Nov. 30, 2009) ("[W]hen takings, due process and equal protection claims arise out of the same factual events, the Court will apply the same

---

[13] Plaintiff argues that the ZBA Decision was final because it inflicted an injury on Plaintiff. (P's MTD Opp. at 8-9.) According to Plaintiff, a use variance would not restore the South Parcel's cemetery designation because the ZBA Decision held that the parcel was "not cemetery property . . . , preclud[ing] the development of that Parcel for cemetery purposes *ad infinitum*." (*Id.* at 8.) To that extent the claim attacking the ZBA Decision duplicates the claim attacking the Comprehensive Plan, which – as discussed – has yet to inflict an actual concrete injury. In any event, however, were Plaintiff to propose a use for that parcel and be granted a variance for it, such development would become a conforming use and restrictions on nonconforming uses would not apply. *See Scarsdale Shopping Ctr. Assocs., LLC v. Bd. of Appeals on Zoning*, 882 N.Y.S.2d 308, 310 (App. Div. 2009) ("[A] use for which a use variance has been granted is a conforming use and, as a result, no further use variance is required for its expansion."); *Angel Plants, Inc. v. Schoenfeld*, 546 N.Y.S.2d 112, 113 (App. Div. 1989) ("a building constructed under a variance is not a nonconforming use within the meaning of the ordinances limiting nonconforming buildings and uses"; therefore, a building "constructed pursuant to a variance, may be altered without regard to limitations on the alteration of nonconforming buildings"). Accordingly, Plaintiff's argument is unavailing.

ripeness inquiry to plaintiff's takings, due process, and equal protection claims.") (internal quotation marks and alterations omitted). Accordingly, all of Plaintiff's federal claims are unripe and therefore dismissed without prejudice for lack of subject matter jurisdiction. *See Murphy*, 402 F.2d at 347 (ripeness is a question of timing and controversy may later become ready for adjudication); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 122 (2d Cir. 1999) ("[W]here federal subject matter jurisdiction does not exist, federal courts do not have the power to dismiss with prejudice, even as a procedural sanction.").

### C. State Law Claims

Plaintiff also asserts that Defendant violated article 9, sections 2 and 3 of the New York State Constitution. (FAC ¶¶ 202-211.) Having determined that the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law cause of action. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (federal courts should decline exercise of jurisdiction where federal law claims have dropped out at early stages of lawsuit and only state law claims remain); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (confirming discretionary nature of supplemental jurisdiction).

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to disqualify Mr. Turner is DENIED, and Defendant's motion to dismiss is GRANTED. The dismissal is without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 30-31), and close the case.

**SO ORDERED.**

Dated: December 17, 2019
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.